## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEFFREY B. FISHER, *et al.*, | |
| Plaintiffs, | |
| vs. | No.  8:15-cv-01357-GJH |
| KIMMY R. CATHEY, | |
| Defendant. | |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Pursuant to Local Rule 105(1) and Federal Rule of Civil Procedure 12(b)(6), "Counter Defendant" JPMorgan Chase Bank, N.A. ("Chase") submits the following Memorandum in Support of its Motion to Dismiss Counter Plaintiff's Counter Complaint.[1]

## <u>Introduction</u>

"Counter Plaintiff" Kimmy Cathey brings four claims premised upon the conclusory allegation that none of the "Counter Defendants" have a right to enforce a negotiable promissory note ("Note") that she executed on April 15, 2005.  Counter Complaint (hereinafter "C. Compl."), ECF No. 43 at ¶¶ 1-2.  That is simply not the law and this "Counter Complaint" is nothing more than an attempt to avoid remand of an improperly-removed foreclosure proceeding, through frivolous legal arguments based on a fundamental misunderstanding of the nature of negotiable instruments and applicable law.  In short, Ms. Cathey contends that through either the transfer of the Note or assignment of the Deed of Trust—both of which are permitted under the express terms of these documents and Maryland law—the Note and Deed of Trust

---

[1] Chase has not been served with a summons, nor has any summons been issued by the Clerk. Accordingly, Chase has not yet been properly served, and does not waive proper service. *See* Fed. R. Civ. P. 4(c)(1), (e), and (h); Local Rule 103(2)(d). Dismissal is warranted for this reason as well. *See* Co-Counter Defendants' Brief, ECF No. 44-1 at 5-7.

were irrevocably "split" or "nullified" such that Counter Defendants other than Chase may not enforce the Note.  This "Note splitting" theory has no basis in law.  Each of her claims is predicated in the first instance upon this untenable theory, and each must be dismissed.

**Factual Allegations**

On April 15, 2005, Ms. Cathey executed a Note in the original sum of $ 193,150. C. Compl. ¶ 15 & Note, ECF No. 44-8.[2]   The Note is secured by a Deed of Trust on a property in Fort Washington, Maryland, executed on that same date, and recorded at Book 22274, Page 406 of the Prince George County Land Records.  *Id.* ¶ 15 & Deed of Trust, ECF No. 5.

The Note identifies Chase as the "Lender" but also states, on behalf of Ms. Cathey, "I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" ECF No. 44-8 at 21, ¶ 1. The Note bears a blank indorsement from Chase, making it a bearer instrument negotiable by possession alone.[3]  *Id.* at 23; *see* Md. Comm. Code § 3-205(b) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone").

The fact that the Note may be transferred without notice to Ms. Cathey, and that the entity that services the loan may change, is explicitly set forth in the Deed of Trust:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs

---

[2] The copy of the Note filed as ECF No. 6 is a faint copy, such that the stamped indorsement is barely visible beneath the signature lines. The indorsement is clearly visible in the copy attached to the Counter Complaint that was mailed to Counter Defendants. *See* ECF No. 44-8, at 23.

[3] *Cf. Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 621 (4th Cir. 2011) ("Negotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it.").

other mortgage loan servicing obligations under the Note, this
Security Instrument, and Applicable Law.  There also might be one
or more changes of the Loan Servicer unrelated to a sale of the
Note.

Deed of Trust, ECF No. 5, ¶ 20.  Chase is identified as the "Lender" in the Deed of Trust as well.

*Id.* at p.2.[4]   The Deed of Trust names Lori Alcott as the Trustee, *id.*, and also allows the Lender,

"at its option, [to] remove Trustee and appoint a successor trustee to any Trustee appointed

hereunder, [who] shall succeed to all the title, power and duties conferred upon Trustee herein."

*Id.* ¶ 24.  Accordingly, consistent with the disclosures in the Note and Deed of Trust, on January

11, 2011, Chase assigned the Deed of Trust to Co-Counter Defendant Mortgage Electronic

Registration Systems Inc. as nominee[5] for Federal National Mortgage Association ("Fannie

Mae"), and recorded this assignment on March 24, 2011 at Book 32532, Page 482 of the County

Land Records.  ECF No. 5-2.  On June 17, 2013, MERS assigned the Deed of Trust to Fannie

Mae, and recorded the assignment on July 23, 2013 at Book 3500, Page 98 of the County Land

Records.  ECF No. 5-3.  On this same date, the Note Holder, Fannie Mae, recorded an

appointment of substitute trustees, at Book 35000, Page 100 of the County Land Records,

authorizing certain individuals to act as Trustee and as agent of the Note Holder.  ECF No. 7.

On July 23, 2013, the substitute Trustees initiated a foreclosure proceeding in the Circuit

Court for Prince George's County, Maryland.  *See* ECF No. 2.  Ms. Cathey removed the

foreclosure proceeding to this Court on May 11, 2015, ECF No. 1, and twice filed "amended"

notices of removal, on May 12 and 14, 2015. ECF No. 18, 23.  The Trustees timely filed a

motion to remand, and this motion is currently pending decision. *See* ECF No. 36.  After

---

[4] Paragraph 13 of the Deed of Trust further provided that the "covenants and agreements of this Security Instrument shall bind . . . and benefit the successors and assigns of Lender." *Id.* at p.10.

[5] MERS acts as nominee under the Deed of Trust, and MERSCORP Holdings, Inc. "maintains an electronic registry that stores information as to who originates, services, and owns mortgage loans." *Ward v. Sec. Atl. Mortgage Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 568 (E.D.N.C. 2012).

opposing the Trustees' motion to remand, ECF No. 42, Ms. Cathey filed a "Counter Complaint" against Chase and other co-defendants, in an apparent attempt to avoid remand through asserting additional claims against third parties. *See* ECF No. 43.

Ms. Cathey alleges that because the "originating alleged lender," i.e., Chase, "unlawfully sold, assigned and/or Deed of Trust related to the Property," C. Compl. at p. 2, no party has authority to enforce the Note and/or Deed of Trust. *Id.* at ¶¶ 1-2.  She bases this claim on the following allegations and conclusions: (1) assignment of the Deed of Trust or some other unspecified "deceptive" act constituted a "failed separation" that "break[s] the chain of title," or results in "nullification" of title, *id.* ¶¶ 16, 18, & 40, (2) the Note was never "properly recorded," *id.* ¶ 17, (3) the individual who signed the 2013 MERS assignment "had no corporate authority" to do so," ¶ 20, and (4) Fannie Mae's affidavit of Note Ownership, filed in the underlying foreclosure proceedings, has somehow resulted in conflicting representations of the identity of "the true creditor" and the beneficiary of the deed of trust. *Id.* ¶¶ 21-22, 26.  Ms. Cathey also appears to generally object to the existence of MERS, though she does not identify any specific facts explaining how an assignment to MERS, and later assignment from MERS, had any impact on the underlying Loan Documents here. *Id.* ¶¶ 34-38.  Based on these speculative and legally tenuous assertions, Ms. Cathey brings claims for declaratory judgment, "quasi contract," violation of the Fair Debt Collection Practices Act ("FDCPA"), and an accounting.

## Argument

I.    Legal Standard.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  When deciding a Rule 12(b)(6)

motion, "a court accepts all well-pled facts as true." *Nemet Chevrolet Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255 (4th Cir. 2009). But "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Id.* Similarly, "unwarranted inferences, unreasonable conclusions, or arguments" do not constitute well-pled facts. *Nemet*, 591 F.3d at 254 (internal quotation marks omitted). The Federal Rules of Civil Procedure, quite simply, require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

"[T]he requirement that a plaintiff's factual allegations 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests' applies to all claimants, including those proceeding *pro se*." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446 (E.D. Va. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); *see also Hawkins v. Hairston,* No. 12–cv–1366–JKB, 2012 WL 5503839, at *2 (D. Md. Nov. 8, 2012) ("[E]ven a *pro se* complaint must meet a minimum threshold of plausibility."). "While *pro se* complaints may represent the work of an untutored hand requiring special judicial solicitude, a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." *McCray v. Fed. Home Loan Mortgage Corp.*, No. CIV.A. GLR-13-1518, 2014 WL 293535, at *7 (D. Md. Jan. 24, 2014) (citing *Weller v. Dep't of Soc. Servs. for the City of Balt.,* 901 F.2d 387, 391 (4th Cir. 1990) (internal quotations omitted)).[6]

II.     The Complaint Fails to Plead Any Viable Claim for Declaratory Relief.

In her Declaratory Judgment claim, Ms. Cathey requests that this Court declare that no entity other than Chase has the right to enforce the Note or Deed of Trust. C. Compl. ¶ 48. None of Ms. Cathey's allegations supports such relief.

---

[6] As discussed at length in Co-Counter Defendants' Brief, this Court likewise lacks subject matter jurisdiction because Ms. Cathey improperly removed an underlying foreclosure action. ECF No. 44-1 at 7-9. Chase hereby joins in this argument and requests dismissal on this basis as well.

First, Ms. Cathey's advances the notion that the Note and Deed of Trust have somehow been separated and that this clouds title to the Property. C. Compl. ¶¶ 16, 18, & 40. Under Maryland law, however, when a Note is transferred, it "carries with it the security provided by the deed of trust." *Anderson v. Burson*, 424 Md. 232, 246, 35 A.3d 452, 461 (2011); *Svrcek v. Rosenberg*, 203 Md. App. 705, 727, 40 A.3d 494, 507-08 (2012). As such, allegations of note "splitting" or "separation" have been "repeatedly and appropriately rejected." *Quattlebaum v. Bank of Am., N.A.*, No. CIV.A. TDC-14-2688, 2015 WL 1085707, at *5 (D. Md. Mar. 10, 2015) (collecting cases). The Fourth Circuit agrees with this view: "One of the defining features of notes is their transferability . . . but on [the plaintiff's] view, transferring a note would strip it from the security that gives it value and render the note largely worthless. This cannot be—and is not—the law." *Horvath*, 641 F.3d at 624 (applying Virginia's Uniform Commercial Code); *accord Scheider v. Deutsche Bank Nat. Trust Co.*, 572 F. App'x 185, 190 (4th Cir. 2014) (reaching same result under South Carolina Uniform Commercial Code). This theory, therefore, fails to state a claim.

Nor does the fact that the Note has been transferred from Chase to Fannie Mae make the Note unenforceable. As discussed above, transfer of a negotiable instrument "vests in the transferee any right of the transferor to enforce the instrument." Md. Comm. Law § 3-203(b); *see also* Cmt. 1 ("An instrument is a reified right to payment. The right is represented by the instrument itself."); *accord Deutsche Bank Nat. Trust Co. v. Brock,* 63 A.3d 40, 48 (Md. 2013) (explaining transfer of note in context of mortgage loan transactions); *Svrcek v. Rosenberg*, 203 Md. App. 705, 727, 40 A.3d 494, 507 (2012) (same). In short, negotiable instruments—such as promissory notes—are freely transferrable and whichever party is entitled to enforce the instrument may do so under the terms of that instrument.

Indeed, Fannie Mae has represented in a sworn document that it is the holder of the Note. ECF No. 18-14.  Such a transfer does not nullify the underlying security.  And though Ms. Cathey alleges that she is unsure of identity of "the true creditor" and the beneficiary of the deed of trust.  C. Compl. ¶¶ 21-22, 26, she has pled no viable basis for this confusion.  She has not alleged, for instance, that Chase has claimed to be the Note Holder (which it is not) nor that anyone *other* than Fannie Mae or agents on its behalf have attempted to enforce the Note through foreclosure.  Rather, any confusion as to the identity of the Note Holder and beneficiary of the Deed of Trust result from Ms. Cathey's unsupported belief in the "note splitting" theory, not any action of the Counter Defendants here.

As to Ms. Cathey's claim that title is clouded because the Note was never "properly recorded," *id.* ¶ 17, this allegation is based on an incorrect application of governing law. Simply put, neither Maryland law nor analogous law elsewhere in the Fourth Circuit requires that the transfer of a negotiable instrument be recorded.  *Maheu v. Bank of Am., N.A.*, No. 12-CV-508, 2012 WL 1744536, at *7 (D. Md. May 14, 2012) (dismissing claim for mortgage fraud where plaintiffs claimed that lack of recorded document evidencing that Fannie Mae was a "secured party" constituted fraud); *cf. Horvath*, 641 F.3d at 625-26 (rejecting such a claim under Virginia law).

Ms. Cathey also alleges that the individual who signed the 2013 MERS assignment "had no corporate authority" to do so." C. Compl. ¶ 20. This is precisely the type of unsupported and conclusory allegation that fails under *Twombly/Iqbal*.  Ms. Cathey pleads absolutely no factual support for this assertion other than her unsupported and repudiated theory that any assignment to MERS was invalid in the first place.  But because Ms. Cathey is neither a party nor a third-party beneficiary to either assignment of the Deed of Trust, she has no standing to challenge the

assignments. *Wolf v. Fed. Nat. Mortg. Ass'n*, 512 F. App'x 336, 342 (4th Cir. 2013)

("[A]ssignment does not affect Wolf's rights or duties at all."); *see also Ward v. Sec. Atl. Mortg.*

*Elec. Reg. Sys., Inc.*, 858 F. Supp. 2d 561, 568 (E.D.N.C. 2012); *Watson v. Bank of Am., N.A.*,

No. CIV. PJM 14-1335, 2015 WL 1517405, at *4 (D. Md. Mar. 30, 2015).

Ms. Cathey's general objections to MERS likewise do not support a declaratory judgment

claim. *See* C. Compl. at ¶¶ 34-38.  Arguments that a loan and Deed of Trust are somehow tainted

or void because of the role of MERS have been roundly rejected.  *See Shabazz v. Ocwen Loan*

*Svcg., LLC*, No. 12-cv-3324-JFM, 2013 U.S. Dist. LEXIS 2739 (D. Md. Jan. 8, 2013)

(dismissing suit where plaintiff alleged, based on generalized claims due to MERS's status, that

the "present holder of the mortgage of plaintiff's property does not properly hold the mortgage");

*Suss v. JPMorgan Chase Bank, N.A.*, No. 09-cv-1627, 2010 WL 2733097, at *5 (D. Md. Jul. 9,

2010) ("As to Plaintiff's criticism of MERS, courts that have considered the issue have found

that the system of recordation is proper and assignments made through that system are valid.");

*Porterfield*, 2013 WL 5755499, at *4 (rejecting claims of "fraud by use of MERS" where Deed

of Trust unequivocally identified MERS).

Finally, to the extent that Ms. Cathey seeks to quiet title through a declaratory judgment

claim, she may not do so here.  As Co-Counter Defendants ably demonstrate, a quiet title action

cannot be maintained during the pendency of a foreclosure. Under Maryland law, a party cannot

bring a quiet title claim if another proceeding to enforce a lien—such as a foreclosure—is

already pending.  *See Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009); Md. Code

Real Prop. § 14-108(a) (<u>"[I]f an action at law or proceeding in equity is not pending</u> to enforce or

test the validity of the title, lien, encumbrance, or other adverse claim, the person may maintain a

suit in equity in the county where the property lies to quiet or remove any cloud from the title.")
(emphasis added).

Moreover, a quiet title action "cannot, as a general rule, be maintained without clear
proof of both possession and legal title in the plaintiff." *Anand v. Ocwen Loan Servicing, LLC*,
754 F.3d 195, 198 (4th Cir. 2014) (quoting *Stewart v. May,* 111 Md. 162, 73 A. 460, 463–64
(1909)). Ms. Cathey here has neither. A deed of trust "transfers the legal title from a property
owner to one or more trustees to be held for the benefit of a beneficiary." *Springhill Lake
Investors Ltd. P'ship v. Prince George's County,* 114 Md.App. 420, 428, 690 A.2d 535, 539
(1997) (emphasis added); *accord Fagnani v. Fisher*, 418 Md. 371, 383, 15 A.3d 282, 289 (2011)
("The conveyance transfers the estate of the debtor to the trustee, giving the trustee legal title to
the property.") (emphasis added).  As such, because Ms. Cathey "conveyed [her] property
through . . . a deed of trust to trustees securing repayment of a loan, [she] no longer [has] a claim
to legal title to the property and a quiet title action is not appropriate." *Harris v. Household Fin.
Corp.*, No. 14-cv-606, 2014 WL 3571981, at *2-3 (D. Md. Jul. 18, 2014) (emphasis added)
(dismissing claim where plaintiffs alleged that note was unenforceable because it had been
"securitized" and the lender was "no longer the owner of the mortgage, deed, or note").

In sum, the Deed of Trust and Note expressly disclosed the fact that the Note could be
transferred, and that the recipient of the instrument would have the power to enforce it. In such
circumstances, Ms. Cathey cannot claim that an action consistent with these disclosures
somehow creates a right to relief. *See Unthank v. Freedom Mortg. Corp.*, No. 13-cv-100-JFM,
2013 U.S. Dist. LEXIS 41316 (D. Md. Mar. 25, 2013); *accord Porterfield v. JP Morgan Chase
et al.*, No. 4:13-cv-128, 2013 WL 5755499 at *2-5 (E.D.N.C. Oct. 23, 2013). Her Declaratory
Judgment claim must be dismissed.

III.   <u>Ms. Cathey Has Not Pled any Damages Caused by Any Act of Counter Defendants.</u>

In addition to requesting that this Court essentially award her free and clear title to the Property, Ms. Cathey seeks $250,000 in compensatory damages from each Counter Defendant. C. Compl. p. 17.  She claims that her credit has been damaged, that the property's "salability has been rendered unmarketable," and that she is "subject to double financial jeopardy" because she does not know "the current beneficiary of the Note and DOT." C. Compl. at ¶¶ 24-26.[7]  She has not pled, however, that her credit was damaged because of any transfer of the Note or assignment of Deed of Trust—nor could she plausibly do so.  Ms. Cathey likewise has not pled that she has attempted to sell her home, or that more than one entity is presently attempting to enforce the Note.  Her claims of harm are conclusory, speculative, and simply insufficient to support her alleged claims for relief.  *See Willis v. Bank of Am., N.A.*, No. CIV.A. ELH-13-2615, 2015 WL 5157501, at *22 (D. Md. Sept. 2, 2015) ("[V]ague assertions that [a plaintiff] 'suffered damages' are insufficient to allege . . . actual injury or loss."); *cf. Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (to standing plaintiff "must have suffered an injury or threat of injury that is 'credible,' not 'imaginary or speculative'").  For this reason, Plaintiff's claims should be dismissed.

IV.   <u>Ms. Cathey Has Not Pled a Viable Claim for "Quasi Contract" Against Chase.</u>

Ms. Cathey's claim for "quasi contract" alleges no specific facts against Chase, nor does it suggest that Chase was unjustly enriched. *See* C. Compl. at ¶¶ 43-51.  This claim must therefore be dismissed as to Chase.  Moreover, under Maryland law, "generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists." *Cty. Comm'rs of Caroline Cty. v.*

---

[7] To the extent Ms. Cathey claims damage to her credit predicated upon her state law claims, such claims are preempted by the Fair Credit Reporting Act. *See* 15 U.S.C. § 1681t(b)(1)(F) & 1681h(e).

*J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100-01, 747 A.2d 600, 610 (2000).  Here, Ms.

Cathey has pled the existence of an express contract between her and Chase—and indeed,

attached that contract to her Complaint—so this claim must fail.

>        V.        Ms. Cathey Has Not Alleged that Chase Violated the FDCPA.

Ms. Cathey's FDCPA claim is not directed to Chase; it is premised on the faulty theory

that any transfer of the Note or assignment of the Deed of Trust was invalid, and that the other

Co-Counter Defendants' attempts to collect on the loan therefore violated the FDCPA. C.

Compl. ¶ 59.  This claim too must be dismissed for that reason alone.  Moreover, Ms. Cathey has

not alleged—as she must—that Chase was a debt collector as defined by the FDCPA.  *See*

*Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D.Md. May 8, 2012).  The facts pled by Ms.

Cathey in fact demonstrate the opposite. Chase was the original Lender under the note—i.e., the

original creditor to whom the debt was owed.  "'Debt collectors' are distinguished from

'creditors' under the FDCPA by the fact that they collect debts that are not owed to them but to

another creditor, and by the fact that the primary purpose of their businesses is to collect debts."

*Clarke v. Dunn*, No. CIV.A. DKC 13-2330, 2014 WL 4388344, at *4 (D. Md. Sept. 4, 2014).

Thus, "the law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies

are not debt collectors and are statutorily exempt from liability under the FDCPA." *Flores v.*

*Deutsche Bank Nat'l Trust Co.*, 2010 U.S. Dist. LEXIS 67255, *17-18 (D. Md. July 7, 2010)

(quoting *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va 2003)).  In

sum, the facts as pled by Ms. Cathey do not plead a viable FDCPA claim against Chase, and the

Court should dismiss this claim.

VI.     Ms. Cathey's Alleged Claim for an Accounting Must Be Dismissed.

"In Maryland, a claim for an accounting is available when one party is under obligation to pay money to another based on facts and records that are known and kept exclusively by the party to whom the obligation is owed, or where there is a fiduciary relationship between the parties." *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 365, 36 A.3d 399, 418 (2012) (internal quotation omitted).  There is simply no allegation here that records were kept exclusively by Chase, as Ms. Cathey had ample opportunity to monitor payments as they were made. *Sparrow v. Bank of Am., N.A.*, No. CIV. JFM-14-0388, 2014 WL 4388350, at *11 (D. Md. Sept. 4, 2014) *aff'd sub nom.*, 600 F. App'x 187 (4th Cir. 2015).  As to the second situation, "[t]he relationship between a borrower and a bank is not fiduciary in nature." *Sparrow*, 2014 WL 4388350, at *11, and a fiduciary obligation arises only in "special circumstances," such as where the lending transaction exceeds the scope of an ordinary mortgage. *See Polek*, 424 Md. at 366. No such circumstances have been alleged here.

This Court has previously dismissed similar allegations against an original lender, observing that the relationship was "contractual, not fiduciary," that the relationship expired once the lender sold its interest in the Note and DOT, and that the records (such as bank account records) were equally available to the plaintiffs there. *Clarke*, 2014 WL 4388344, at *11.  The same is true here, and this claim must be dismissed.

## CONCLUSION

For the foregoing reasons, all of Counter Plaintiff's claims against Chase should be dismissed with prejudice.

Respectfully submitted this the 13th day of November, 2015,

<u>/s/ Matthew G. Lindenbaum</u>
Matthew G. Lindenbaum, Esq.
Federal Bar No. 18196
NELSON MULLINS RILEY & SCARBOROUGH LLP
Attorneys for JPMorgan Chase Bank, N.A
One Post Office Square, 30th Floor
Boston, MA 02109
Tel: 617.202.4632
Fax: 617.573.4710
E-mail: matthew.lindenbaum@nelsonmullins.com

## Certificate of Service

I hereby certify that on November 13, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notification of such to all registered users.

And I hereby certify that I have mailed the foregoing by First Class U.S. Mail, postage prepaid, to the following non CM/ECF participants:

Kimmy Cathey a/k/a Kimmy Ford
626 Joe Klutsch Drive
Fort Washington, MD 20744
*Plaintiff, pro se*

*s/ Matthew G. Lindenbaum*
Matthew G. Lindenbaum